**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**CHERIE L. CRAWFORD o/b/o
Lloyd Crawford (deceased),**

    **Plaintiff,**

v.                                                         **Case No. 8:08-cv-91-T-TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                     /

**O R D E R**

The Plaintiff seeks judicial review of the denial of her husband's claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

Claimant, Lloyd Crawford, filed his application for disability insurance benefits on July 15, 2003 (protective filing date), alleging disability as of August 30, 2001, by reason of herniated discs, hepatitis C, and type II diabetes. At that time, Claimant was 6' 1" tall and weighed 285 pounds. He had past relevant work as a plumber, factory assembler, and laborer. Claimant was subsequently awarded benefits commencing October 1, 2003, based on a malignancy of the pancreas. He died in April 2004 at the age of forty-nine. Claimant's wife, Cherie Crawford, was substituted as the Plaintiff. She sought reconsideration of the partially

favorable decision based on the allegation of an earlier onset date, namely, June 2001. The request for reconsideration was denied.

On September 14, 2006, Plaintiff received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that her husband suffered other severe conditions that rendered him disabled in June 2001, prior to his onset date for cancer.[1] By her testimony, Claimant last worked as a plumber, although he was unable to lift or climb as necessary. Thereafter, he tried to do some handyman type work, but it was too much for him given his condition. By Plaintiff's account, Claimant suffered from severe back pain for many years. Plaintiff acknowledged that her husband began using cocaine in about 2000 or 2001, and had previously smoked marijuana for some time. Ostensibly, he took the cocaine to relieve his pain. The cocaine was purchased with money taken from Plaintiff and by Claimant selling things from the house. Eventually, he was prosecuted criminally for cocaine offenses. Claimant smoked cigarettes as well. His condition went downhill rather quickly. When he was working, he weighed in excess of 300 pounds, and by the time of his death, he was down to "nothing." He used a cane for a period of time to help him walk. At that time, he was unable to do household chores because of pain. He stayed in a recliner most of the day if he was not attempting to work. Plaintiff had to help her husband dress. By her account, Claimant also suffered from upper respiratory problems and cough syncope, which caused

---

[1] As noted above, Claimant's application alleged an onset date of August 31, 2001. At the hearing, Plaintiff and counsel somewhat vaguely claimed a June 2001 date.

2

him to cough so much that he would nearly pass out. At night, Claimant was unable to sleep lying down because of his condition. (R. 703-25).

The ALJ next took testimony from Dr. Steven Simon, a vocational expert ("VE"). The VE testified on an assumption of an individual of Claimant's age and education, with the ability to perform light exertional work that required no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling and no climbing vertical ladders, scaffolds, ropes or working at unprotected heights. On that assumption, the VE testified that Claimant could still perform his former work as an assembler and factory laborer, as well has his work with the printing company. Assuming the hypothetical individual was limited to sedentary exertional activities with the same restrictions, the VE indicated such person could still perform the factory laborer job, which Claimant performed at the sedentary level, and the printing company work, which Claimant also performed at that level. Assuming such individual would have to lie down for two to four hours during an eight-hour shift, there would be no work available. Assuming the individual was capable of performing sedentary work with a twenty-five percent loss of grip strength in both hands, the loss of motor strength in the upper extremities such that the hands could not be used repetitively, and only minimal lifting, the VE opined that such individual could not perform the factory laborer work or any work at the printing company. However, at such sedentary level, the VE opined that the individual could work as a surveillance system monitor and telephone solicitor. (R. 725-30).

Also before the ALJ were medical records outlining the Claimant's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

3

By his decision of November 22, 2006, the ALJ determined that while Claimant had severe impairments related to lumbar and cervical herniated discs and bulges with moderate stenosis, hepatitis C, and non-insulin dependent diabetes, he nonetheless had the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk less than two hours in an eight-hour workday, sit about 6 hours in such workday, with occasional postural limitations and no climbing vertical ladders, scaffolds, ropes or working around unprotected heights. Upon this finding and the testimony of the VE, the ALJ concluded that Claimant could perform his past work as an assembler, factory laborer and printer, as well as other jobs available to him in the local and national economy. Upon this conclusion, the Claimant was determined to be not disabled. (R. 17-23). The Appeals Council denied Plaintiff's request for review.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See*

*id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

1. The ALJ erred in claiming that the statements of the wife of the claimant concerning the intensity, persistence and the limiting effects of the claimant's symptoms were not entirely credible. The ALJ gave no basis for finding the wife less than fully credible; and

2. The ALJ erred in claiming that the credibility of the deceased claimant was open to some question based upon the claimant's drug and alcohol use during the period in question. The ALJ was required to explain in greater detail why said abuse challenged or question (sic) the credibility of the claimant.

By the first argument, Plaintiff maintains that the conclusory statement by the ALJ -- that her testimony was not entirely credible, is wholly inadequate to satisfy the regulations or case law which require the ALJ to determine the weight accorded to the testimony of each witness. In support, Plaintiff cites the regulation at 20 C.F.R. § 404.1529 and *Lucas v. Sullivan,* 918 F.2d 1567 (11th Cir. 1990). On the second claim, Plaintiff similarly urges that the ALJ erred by merely referencing Claimant's substance abuse as a basis for discrediting his testimony. By Plaintiff's argument, the fact that Claimant suffered from drug or alcohol abuse alone is not in and of itself reason to impair his credibility. In conclusion, Plaintiff seeks a remand for further development of the credibility determination. After careful review, I conclude that the ALJ has adequately set forth his credibility findings and Plaintiff is not entitled to relief on either claim.

The regulations at 20 C.F.R. § 404.1529(c) dictate that, when, as here, the medical evidence shows that a claimant has medically determinable impairments that could reasonably be expected to produce the symptoms complained of, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the claimant's capacity for work. On that inquiry, the ALJ must consider all the available evidence, including that from the medical record and statements from the claimant and other witnesses. The regulation states that ultimately, "symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* at § 404.1529(c)(4). In *Lucas*, the court noted that an ALJ is obliged to state the weight he accords each impairment and "the reasons for his decision to accept or reject that evidence, including all testimony presented at the [hearing]." *Lucas*, 918 F.2d at 1574. Here, the complaint is not that the ALJ ignored the Plaintiff's testimony about the severity, persistence, and limiting effects of her husband's pain, but that he discounted the same summarily and without adequate support.

After careful reading of the decision, the medical evidence, and Plaintiff's testimony, I disagree. The conclusory finding that Plaintiff's testimony was "not entirely credible," has to be read in the context of the entire analysis of the ALJ and his review of the medical record. As the decision reflects, immediately upon reaching this conclusion, the ALJ set forth a reasonably detailed and accurate review of the medical records from Claimant's treating doctors, as well as the findings from consultative doctors. By this review, while Claimant suffered impairments that could reasonably be expected to give rise to the alleged symptoms,

7

those symptoms did not disable him from all work. Indeed, by the ALJ's assessment, Claimant was still capable of a restricted range of light work until October 2003, at which time his condition had deteriorated significantly and he was diagnosed with cancer. Plaintiff makes no showing on this appeal that the ALJ's review of the medical evidence was incomplete or inaccurate and significantly, no showing that such record fails to support the ALJ's conclusion that Plaintiff simply overstated Claimant's limitations. My own review of the medical record from 2001 through 2003 suggests that Claimant had severe neck and back impairments and resultant limitations, but none of his doctors found him disabled or limited beyond that determined by the ALJ.[2] In short, I conclude that the ALJ has complied with the applicable standards and adequately indicated the bases for his credibility findings.

Plaintiff also urges that the ALJ should not have discounted Claimant's credibility because of his drug and alcohol abuse. Citing *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987), Plaintiff urges the ALJ was duty bound to explain what it was about the substance abuse that damaged Claimant's credibility. In *Hale*, the court stated that subjective pain testimony that is supported by medical evidence of a condition that can reasonable be

---

[2]The Commissioner's brief fairly supports the decision by citation to the medical record. As there urged, Dr. Sardha Perera, a pain management doctor, treated Claimant in 2001 and 2002. In one note, he found Claimant somewhat limited by his neck and back impairments but capable of light duty work without any excessive pulling, pushing, bending or lifting over 30 pounds. (R. 396-97). Later, in July 2002, he reported that Claimant's pain was reasonably controlled with medication. (R. 385). The reports from other treating doctors such as Dr. Anthony, Dr. Chowdhury, Dr. Berman and Dr. Gubernick, offer Claimant little consolation. A consultative evaluation in October 2003 suggested Claimant's functional capacity was greatly decreased, but as the Commissioner points out, this was after he had been found disabled. While the Claimant clearly had a number of limiting impairments, his treatment records supply substantial evidence to support the ALJ's conclusion that he was not disabled before October 2003.

expected to produce the symptoms is itself sufficient to support a finding of disability. *Id.* at 1011 (citing *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1552 (11th Cir. 1986)). Under this "pain standard," if the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Id.*; *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Bowen,* 810 F.2d 1001, 1004 (11th Cir. 1986).

Here, it appears that Plaintiff is complaining of the statement by the ALJ made upon the conclusion of his review of the medical record that, "[i]n conclusion, while the claimant did experience low back pain, his condition would not appear to have precluded all work activity. *In addition, credibility is open to some question based upon the claimant's drug and alcohol abuse during the period in question*. Regarding the allegation of severe back pain, the impact on his residual functional capacity was minimal aside from the aforementioned reasonably determined residual functional capacity." (R. 22) (emphasis supplied). Rather than reflecting on any particular statements by the Claimant (or his credibility), I read this statement as a small part of the ALJ's rationale for assessing Claimant's residual functional capacity as he did and reflecting on his determination why not to fully credit *Plaintiff's* testimony. Even if this comment lacks sufficient explication, it hardly merits a remand for further review. As set forth above, I conclude that the ALJ had more than ample bases in the medical evidence to conclude that any claim by Plaintiff that Claimant could do no work at all was simply over stated. In any event, Claimant's drug use, which apparently at one point had him using cocaine and/or marijuana on a daily basis during the relevant period under review, was not a wholly irrelevant consideration to his ability to do some work on a full-time basis.

9

Thus, I cannot fault the ALJ for raising such suspicions, and a remand for further explanation of the same would serve no useful purpose.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 26th day of March 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record